# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Student DOE #3, et al., | No. CV-25-00183-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Donald J Trump, et al., | |
| Defendants. | |

Pending before the Court are Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction and Motion to Proceed with Pseudonym and For Protective Order. (Docs. 3, 4.) For the following reasons, the Court will grant Plaintiffs' Motion for Temporary Restraining Order ex parte and issue a protective order while the Motion to Proceed Under Pseudonym is further briefed.

**I.    Background**

**A. The F-1 Student Visa Program and SEVIS**

Under the Immigration and Nationality Act ("INA"), foreign students may enter the United States to pursue a full course of study at an approved educational institution. 8 U.S.C. § 1101(a)(15)(F)(i). Students admitted under this provision are classified as F-1 nonimmigrants. 8 C.F.R. § 214.1(a)(2). To be eligible for admission, the student must present a Form I-20, issued by a school certified by the Student and Exchange Visitor Program ("SEVP") for attendance by F-1 foreign students, and provide documentary evidence of financial support. 8 C.F.R. § 214.2(f)(1)(i). If admitted, the State Department

issues a visa ("F-1 visa") that allows a qualified academic student to enter the country pursuant to their status under 8 U.S.C. § 1101(a)(15)(F)(i) ("F-1 status"). *See* 22 C.F.R. § 41.61(a)(1), (b)(1).

Immigration and Customs Enforcement ("ICE"), within the U.S. Department of Homeland Security ("DHS"), administers the F-1 visa system through the SEVP. *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172 (3d Cir. 2019). SEVP manages and tracks nonimmigrant students' statuses through a centralized database, known as the Student and Exchange Visitor Information System ("SEVIS"). (Doc. 1 at ¶ 30; Doc. 3 at 2-3.) Schools must update SEVIS when a student's information changes, including when a student fails to maintain F-1 status. 8 C.F.R. § 214.3(g)(2)(i)-(ii).

F-1 students are admitted for the "Duration of status," or "the time during which an F-1 student is pursuing a full course of study . . . or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5)(i). An F-1 student maintains their F-1 status if they are making normal progress toward completing a course of study, regardless of whether their F-1 visa expires. *Id.*; (*see* Doc. 3 at 11). A student who fails to maintain a full course of study without the approval of the Designated School Official ("DSO") or otherwise fails to maintain status must depart the United States immediately or seek reinstatement.[1] *Jie Fang*, 935 F.3d at 175–76 (citing 8 C.F.R. § 214.2(f)(5)(iv)).

A student can lose their F-1 status by either: (1) failing to meet the regulatory requirements for maintaining status or (2) termination of status by DHS. *Doe v. Noem*, No. 25-CV-00633, 2025 WL 1141279, at *2 (W.D. Wash. Apr. 17, 2025) (citing 8 C.F.R. §§ 214.1(d), 214.2(f)(5)(iv)). A student fails to maintain F-1 status if they engage in unauthorized employment, willfully fail to provide full and truthful information to DHS, or are convicted for a crime of violence for which a sentence of more than one year imprisonment may be imposed. 8 C.F.R. § 214.l(e)–(g). DHS may terminate a student's F-1 status in three ways: (1) revocation of a waiver authorized under section 212(d)(3) or

---

[1] A student may seek reinstatement pursuant to the process set out in 8 C.F.R. § 214.2(f)(16), but the decision to reinstate is at the discretion of U.S. Citizenship and Immigration Services ("USCIS"), and the student may not appeal the decision. *Jie Fang*, 935 F.3d at 176 (citing 8 C.F.R. § 214.2(f)(16)(ii)).

212(d)(4) of the INA; (2) introduction of a private bill to confer permanent resident status on the student; or (3) notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons. *Id.* § 214.1(d). "DHS's ability to terminate an F-1 student's status is limited to the three ways enumerated in § 214.1(d)." *Doe v. Noem*, 2025 WL 1141279, at *2 (citing *Jie Fang*, 935 F.3d at 185 n.100).

### B. The Plaintiffs

Plaintiffs are 11 international students attending Arizona colleges and universities as authorized by their F-1 student status. (*See* Doc. 1.) One Plaintiff is currently pursuing a doctorate degree, six are pursuing bachelor's degrees, four are pursuing master's degrees, and one is participating in Occupational Practical Training (OPT). (*Id*. at ¶¶ 14–24.) Two of the Plaintiffs reside in Pima County; the remaining nine reside in Maricopa County. (*Id*.)

Between March 25, 2025 and April 10, 2025, SEVP terminated Plaintiffs' SEVIS records, indicating ten of the Plaintiffs terminations as "Otherwise failing to maintain status – Individual identified in criminal records check and/or has had their visa revoked." (*Id*. at ¶ 2.) The stated reason for Doe #12's SEVIS record termination was "Otherwise failing to maintain status – Student is terminated pursuant to INA Sec. 237(a)(1)(C)(i) and 237(a)(4)(C)(i)." (*Id*. at ¶ 49.) The Plaintiffs were notified by the U.S. Department of State between March 25, 2025 and April 8, 2025 that their F-1 visas were revoked. (*Id*. at ¶ 3.)

All 11 Plaintiffs had contact with law enforcement during their time in the United States as international students. (*Id*. at ¶¶ 40–50.) All of the Plaintiffs have previously been charged with at least one misdemeanor. (*Id*.) Four of the Plaintiffs were convicted of at least one of the misdemeanors with which they were charged. (*Id*. at ¶¶ 44, 46, 48, 49.) One of the Plaintiffs, Doe #7, later had their misdemeanor conviction set aside. (*Id*. at ¶ 44.) The Plaintiffs allege that the misdemeanors—whether only charged or if convicted— would not "render Plaintiff[s] inadmissible to or deportable from the United States." (*See id*. at ¶¶ 40–50.)

Five of the Plaintiffs had on-campus or otherwise-approved student employment terminated due to their SEVIS records being terminated. (*Id*. at ¶¶ 40, 43–45, 48, 49.)

Further, Doe #7 alleges that they were advised their OPT employment would be terminated as early as April 25, 2025. (*Id.* at ¶ 44.)

Plaintiffs brought this action on April 22, 2025, asserting causes of action under the Administrative Procedure Act ("APA"), the Due Process Clause of the Fifth Amendment, and the *Accardi* Doctrine. (*Id.* at ¶¶ 53–69.) In Counts I, III, and V, Plaintiffs argue their SEVIS terminations are not in accordance with law, arbitrary and capricious, and contrary to their constitutional right to due process, in violation of the APA. (*Id.* at ¶¶ 54–56, 62–64, 67–69.) In Count II, Plaintiffs argue their SEVIS records were terminated on improper grounds without prior notice or an opportunity to respond in violation of their Fifth Amendment right to due process. (*Id.* at ¶¶ 58–60.) In Count IV, Plaintiffs argue the Government's policy of targeting African, Arab, Middle Eastern, Muslim, and Asian students for removal based on their race and national origin violates the APA and the *Accardi* doctrine. (*Id.* at ¶ 65 (citing *Accardi v. Shaughnessy*, 347 U.S. 260 (1954)).[2]

In a pending Motion to Proceed with Pseudonym and For Protective Order, Plaintiffs seek leave to proceed under the pseudonyms "Student Doe #3, Student Doe #4, Student Doe #5, Student Doe #6, Student Doe #7, Student Doe #8, Student Doe #9, Student Doe #10, Student Doe #11, Student Doe #12, and Student Doe #13", and request a protective order that "[a]ny materials filed with the Court that contain Plaintiffs' names or identifying information [] be redacted and/or filed under seal," and that any identifying information disclosed by Plaintiffs' Counsel only be shared by Defendants with "individuals directly involved in the litigation who agree to be bound" by such protective order as reasonably necessary for the litigation. (Doc. 4-2 at 1–2.)

Further, in their Emergency Motion for a Temporary Restraining Order ("TRO"), Plaintiffs request:

> A) That prohibitive injunctive relief, through the issuance of a temporary restraining order, is necessary to preserve the status quo ante of Plaintiffs'

---

[2] In today's news, it was reported that ICE announced that it is manually reversing the termination of legal status for international students and restoring student status. ICE stated that it is developing a policy that will provide a framework for SEVIS record terminations. The government has not appeared in the pending case or provided such information. At this time, there is no indication that the Plaintiffs' SEVIS records have been restored.

valid international student status that authorizes them to continue pursuing their studies and authorized student employment, which includes the ability to seek the concomitant benefits of that valid status such as the legal eligibility to apply for Optional Practical Training, Curricular Practical Training, or a change of status to another non-immigrant visa status, while this litigation remains pending;

B) That prohibitive injunctive relief, through the issuance of a temporary restraining order, is also necessary to prevent Defendants from arresting and detaining Plaintiffs pending these proceedings, transferring Plaintiffs away from the jurisdiction of this District pending these proceedings, or removing Plaintiffs from the United States pending these proceedings;

C) That, under the circumstances of this case, it is proper to waive the requirement that Plaintiffs give an amount of security in connection with the issuance of an injunctive order; and

D) That, following subsequent briefing and argument on the issues, it is appropriate to order mandatory injunctive relief, through the issuance of a preliminary injunction, to prevent the damages described above, and to vacate and set aside the termination of their SEVIS record, and to reinstate or reissue Plaintiffs' I-20 form(s).

(Doc. 3 at 30–31.)

## II.   Legal Standard – Temporary Restraining Order

A party seeking preliminary injunctive relief under Federal Rule of Civil Procedure 65 must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the standard for issuing a preliminary injunction is substantially identical to the standard for issuing a TRO). The balance of equities and public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Where a party "can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the [party]'s favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d

1127, 1135 (9th Cir. 2011)). Under this Ninth Circuit "serious questions" test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

> A TRO may be entered without notice to the adverse party if:
>
>> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>>
>> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). Here, Petitioner's attorney certified in writing that he attempted to notify the U.S. Attorney for the District of Arizona of Petitioners' motion via e-mail. (*See* Doc. 1-2.) No response has yet been filed.

An ex parte TRO expires at the time after entry that the court sets, not to exceed 14 days, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. Fed. R. Civ. P. 65(b)(2). If a TRO is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time. Fed. R. Civ. P. 65(b)(3).

**III.   Discussion**

   **A. Likelihood of Success on the Merits**

Plaintiffs' arguments in Counts I and V, that termination of their SEVIS records was arbitrary and capricious and not in accordance with law under the APA, are likely to succeed on the merits, or at least, raise serious questions going to the merits.[3]

Plaintiffs allege that DHS failed to follow its own rules and regulations governing the proper termination of F-1 students' SEVIS records. (Doc. 3 at 28.) An agency violates the APA when it does not follow its own regulations and procedures. *See Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003). The Plaintiffs argue that ICE's ability to terminate a student's SEVIS record is limited to the three circumstances set forth

---

[3] Because Plaintiff has established a likelihood of success on the merits of the APA claims in Counts I and V, the Court does not address Plaintiff's likelihood of success on Counts II, III, or IV.

in 8 C.F.R. § 214.1(d): (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) ICE publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. (*Id.* at 30 (citing *Jie Fang*, 935 F.3d at 185 n. 100).)

Under the APA, reviewing courts shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if the agency fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency must "articulate a satisfactory explanation for its action." *Hernandez v. Garland*, 52 F.4th 757, 768 (9th Cir. 2022) (quoting *State Farm*, 463 U.S. at 43).

Here, the stated reason for the termination of the SEVIS records of Plaintiff Does #3, #4, #5, #6, #7, #8, #9, #10, #11, and #13 was, "Otherwise failing to maintain status – Individual identified in criminal records check and/or has had their visa revoked," or a nearly identical statement and terminology. (Doc. 1 at ¶¶ 40–50.) Pursuant to an ICE Policy Guidance, neither the existence of an arrest nor the revocation of a visa, constitutes, in and of itself, failure to maintain status. (Doc. 3 at 30 n.22.) Additionally, 8 C.F.R. § 214.1(g) clarifies that a conviction for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status under section 241(a)(1)(C)(i) of the Act.

Here, none of the Plaintiffs' interactions with law enforcement would constitute a basis for designating them as failure to maintain status. The Plaintiffs contend that the arrests of Does #3, #4, #5, #6, #8, #10 and #13 and the "minor misdemeanor" convictions of Does #7, #9, and #11 do not fall within the regulations which would otherwise render those Plaintiffs "inadmissible to or deportable from the United States." (Doc. 3 at 10, 12, 15.) Accordingly, the reason stated by the Government as to the termination of those

Plaintiffs' SEVIS records are contrary to "its own regulations and procedures" and may likely be unlawful under the APA.

The stated reason for the termination of Plaintiff Doe #12 is "INA Sec. 237(a)(1)(C)(i) and 237(a)(4)(C)(i)." (Doc. 3 at 24.) Section 237(a)(1)(C)(i) pertains to failure to maintain status—the same reason provided for termination of the SEVIS records of the other ten Plaintiffs. *See* 8 U.S.C. § 1227(a)(1)(C)(i). Like the other Plaintiffs, Plaintiff Doe #12 contends they do not have a qualified arrest or conviction. Therefore Doe #12's revocation pursuant to 237(a)(1)(C)(i) would be contrary to Defendants' regulations and procedures. Section 237(a)(4)(C)(i) provides: "[a]n alien whose presence or activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States is deportable." 8 U.S.C. § 1227(a)(4)(C)(i). Plaintiff Doe #12 similarly alleges that they are unaware of any basis which would support application of this provision. (Doc. 3 at 12.)

### B.  Irreparable Harm

Plaintiffs have sufficiently alleged that irreparable harm has already occurred and that further irreparable harm is imminent. Plaintiffs allege that they cannot continue their studies or work without an active SEVIS record. (*Id.* at 33.) Indeed, five of the eleven Plaintiffs have already been terminated from their authorized on-campus employment, and one Plaintiff alleges that they will imminently be terminated from their OPT program based on the termination of their SEVIS records. (*Id.* at 34.) Further, as Plaintiffs allege, it is unclear whether the termination of the SEVIS records will preclude any or all of them from completing their chosen course of studies for which they were authorized under their F-1 student status.

### C.  Balance of Equities and Public Interest

The Court finds the balance of equities weighs in Plaintiff's favor and issuing temporary injunctive relief will serve the public interest. The public has an interest in the government following its own regulations and, given the exigent circumstances, the Court believes that it is in the public interest to preserve the status quo until the Court can receive

further briefing in this matter.

### IV. Motion to Proceed with Pseudonym and Protective Order

Generally, a party proceeding anonymously "runs afoul of the public's common law right of access to judicial proceedings, . . . and Rule 10(a)'s command that the title of every complaint 'include the names of all the parties.'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (quoting Fed. R. Civ. P. 10(a)). However, when special circumstances justify secrecy, federal courts may allow parties to proceed under a pseudonym. *Id.* (collecting cases). In the Ninth Circuit, the standard is whether "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068.

At this time, the Court will not rule on the Plaintiffs' Motion to Proceed with Pseudonym. Defendants should be allowed an opportunity to respond to the motion prior to a ruling. The Defendant is ordered to respond to the Plaintiffs' Motion to Proceed with Pseudonym along with their response to the Plaintiffs' Emergency Motion for Temporary Restraining Order. In the meantime, the Court will issue a protective order as to the identities of the Plaintiffs to maintain the status quo, but require certain protected disclosures to the Defendants to enable them to respond to Plaintiffs' requests for relief.

### V. Bond

Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction or TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)).

Here, the Government faces no realistic likelihood of harm from Plaintiffs' requested temporary injunctive relief, and the Court will not require Plaintiffs to file a bond.

Accordingly,

**IT IS ORDERED:**

1. Plaintiffs' Emergency Motion for Temporary Restraining Order is **granted** to preserve the status quo until the Court can receive further briefing and hold an expedited hearing on Plaintiffs' Motion for Preliminary Injunction on **Tuesday, May 6, 2025 at 2:00 p.m.** The Government shall file a response to Plaintiff's Motion (Doc. 3) and Motion to Proceed with Pseudonym and For Protective Order (Doc. 4) no later than **Thursday, May 1, 2025** and Plaintiff shall file a reply no later than **Monday, May 5, 2025**.

2. On or before the close of business on **Monday, May 5, 2025**, Counsel for the parties shall meet and confer and submit to the Court a joint pre-hearing statement. In the joint pre-hearing statement, the parties must set forth a summary of the issues relevant to the motion and the parties' positions; a statement of the Court's jurisdiction; a list of each party's proposed witnesses and the likelihood of their appearance; and a list of each party's exhibits.

Additionally, prior to the hearing, counsel must provide a Notice to Court Reporter to facilitate the creation of an accurate record. The Notice shall contain the following information that may be used during the proceeding:

    a. Proper names, including those of witnesses.

    b. Acronyms.

    c. Geographic locations.

    d. Technical/medical terms, names, or jargon.

    e. Table of authorities, in alphabetical order, which includes all the authorities on which the parties will rely at the proceeding.

The Notice to Court Reporter need not be filed but shall be provided by email to Judge Zipps' Court Reporter, Linda Parks (Linda_Parks@azd.uscourts.gov), with a courtesy copy to Judge Zipps' Chambers (zipps_chambers@azd.uscourts.gov).

3. Defendants are temporarily enjoined for **14 days**,[4] or until further Court order, from

---

[4] In accordance with Fed. R. Civ. P. 65(b)(2), the Court specifies that this Order was filed on April 25, 2025 at approximately 2:44 p.m.

arresting and detaining the Plaintiffs pending these proceedings, transferring the Plaintiffs away from the jurisdiction of this District pending these proceedings, or removing Plaintiff from the United States pending these proceedings.

4. Defendants' actions terminating the Plaintiffs' SEVIS record shall have no legal effect and shall not obstruct the Plaintiffs from continuing to pursue their academic and employment pursuits that Plaintiffs are authorized to pursue as international students in F-1 status.

5. Plaintiffs shall serve Defendants with this Order within three business days.

6. Counsel for Plaintiffs shall disclose Plaintiffs' identities to counsel for Defendants. Counsel for Defendants may only further disclose Plaintiffs' names and related personal information to individuals directly involved in the litigation who agree to be bound by this Order, and only as reasonably necessary for the litigation, including to comply with any orders of the Court. Such information may not be used for any purpose outside the immediate litigation, including for enforcement or removal.

7. Any materials filed with the Court must not contain Plaintiffs' names or identifying information.

Dated this 25th day of April, 2025.

_____
Jennifer G. Zipps
Chief United States District Judge