TIMOTHY COURCHAINE
United States Attorney
District of Arizona
J. COLE HERNANDEZ
Assistant U.S. Attorney
Arizona State Bar No. 018802
DENISE ANN FAULK
Assistant U.S. Attorney
State Bar No. 12700
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Fax: (520) 620-7149
E-Mail:  cole.hernandez@usdoj.gov
            denise.faulk@usdoj.gov
*Attorneys for the United States*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Student Does #3-13,<br><br>                    Plaintiff,<br><br>    v.<br><br>Donald J. Trump, et al,<br><br>                    Defendants. | **CV-25-00183-TUC-JGZ**<br><br>**RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** |

The United States of America, specially appearing through undersigned counsel on behalf the named Defendants in their official capacities, hereby responds to Plaintiff's Motion for Preliminary Injunction (Doc. 3). This response is supported by the following memorandum of points and authorities, attached Exhibit and all matters of record.

**Memorandum of Points and Authorities**

Plaintiffs assert they are challenging ICE's termination of their SEVIS records. (Doc. 1.) However, they conflate the termination of their SEVIS records with a termination of their status as nonimmigrant students (F-1 student status). The only action Defendants have taken is to have the Student Exchange Visitor Program (SEVP) amend Plaintiffs' records in the Student and Exchange Visitor Information System (SEVIS) database from "active" to "terminated." Defendants did not delete Plaintiffs from the database or

terminate their F-1 status.  As a result, Plaintiffs' Complaint does not raise a justiciable case or controversy.

While Plaintiffs assert that they "do not challenge the revocation of their visas in this action," they request that the Court "[e]njoin Defendants from taking any enforcement action against Plaintiffs arising directly or indirectly from . . . the potential unlawful revocation of their F-1 visa which may have already occurred." (Doc. 1 at 5, 33.)  To the extent that Plaintiffs are attempting to challenge the State Department's revocation of their F-1 visas, State Department's revocation decisions are judicially unreviewable.  8 U.S.C. § 1201(i).  "There shall be no means of judicial review . . . of a revocation under this subsection, except in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title."  *Id.*  Furthermore, the Immigration and Nationality Act (INA) strips this Court of jurisdiction to review actions made discretionary by legislation.  *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024) (citing 8 § 1252(a)(2)(B)(ii)).

This Court should decline Plaintiffs' requested relief.  Plaintiffs cannot show any of the requirements for a preliminary injunction.  First, they fail to demonstrate a likelihood of success on the merits: (a) Plaintiffs identify no actual case or controversy, (b) the United States has not waived sovereign immunity, (c) termination of a SEVIS record is not a final agency action, and (d) Plaintiffs do not have a protected interest in a SEVIS record to give rise to due process protections.  Second, Plaintiffs fail to establish irreparable harm because their alleged harms are speculative or relate to the State Department's revocation of their visas, which is not reviewable before this Court.  Finally, the balance of harms and the public interest weigh in favor of the Executive's ability to control immigration.

Accordingly, this Court should deny Plaintiff's request for extraordinary relief.

## I.    Statutory and Regulatory Framework

Enforcing the immigration laws of the United States is the Executive Branch's sovereign prerogative.  Congress mandated that the Department of Homeland Security (DHS) "develop and conduct a program" to collect certain information from approved

institutions of higher education in the United States with respect to aliens seeking F-1 student status.  *See* 8 U.S.C. § 1372.  Under this authority, DHS (ICE and SEVP) established SEVIS.

### A.    The F-1 Nonimmigrant Student Classification

The INA, as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States."  8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status").

To be admitted in F-1 status, an applicant must present a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by a certified school in the student's name; present documentary evidence of financial support; demonstrate he intends to attend the school specified on the student's visa; and, if the student attends a public secondary school, demonstrate that he has reimbursed the local educational agency administering the school for the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance.  8 C.F.R. § 214.2(f)(1)(i).  He must then obtain a nonimmigrant F-1 visa issued by the State Department.  8 U.S.C. § 1201(a)(1)(B).

Individuals admitted in F-1 status are permitted to remain in the United States for the duration of status, which "is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies."  8 C.F.R. § 214.2(f)(5).  There are two types of such training: curricular practical training and optional practical training.  *Id*. § 214.2(f)(10).  Both must be "directly related to [a student's] major area of study."  *Id*.  While in school, the student's status is based on that student pursuing a degree and need not be routinely renewed.  *Id.* § 214.2(f)(7).

An F-1 student admitted for the duration of status found to have violated his status does not begin to accrue unlawful presence until the day after United States Citizenship and

Immigration Services (USCIS) denies a request for another immigration benefit or, during

removal proceedings, the day after an Immigration Judge enters an order that the individual

violated his nonimmigrant status.  *See* USCIS Memorandum on May 6, 2009,

"Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section

212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," at 25, available at:

https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF

(last visited May 1, 2025); *see also* 8 C.F.R. § 239.3.

    **B.    SEVIS**

    Congress required that DHS "in consultation with the Secretary of State and the

Secretary of Education, . .  develop and conduct a program to collect [certain information]

from approved institutions of higher education, other approved educational institutions, and

designated exchange visitor programs in the United States [certain information] with

respect to aliens who have the status, or are applying for the status, of nonimmigrants under

subparagraph (F), (J), or (M) of section 1101(a)(15) of this title."  8 U.S.C. § 1372(a)(1).

(*See also* Ex. A, Watson Decl., ¶ 4.)

    Accordingly, the DHS created SEVIS, a web-based system used "to maintain

information on Student and Exchange Visitor Program-certified schools, F-1 and M-1

students who come to the United States to attend those schools, U.S. Department of State-

designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program

participants."  ICE, Student and Exchange Visitor Information System (available at:

https://www.ice.gov/sevis/overview) (last visited May 1, 2025).  Inherent in DHS' broad

authority to develop and conduct the oversight program is SEVP's ability to update and

maintain the information in SEVIS and, as such, to terminate SEVIS records, as needed, to

carry out the purposes of the program.  (*See* Ex. A, ¶ 4.)

    Importantly, terminating a SEVIS record does not necessarily indicate a termination

of nonimmigrant status.  *See* DHS, SEVIS Terminate a Student, https://perma.cc/E9C2-

9GR5  (captured Apr. 28, 2025).  ("[T]ermination is not always negative. [School officials]

can terminate records for several normal, administrative reasons.").  Under the INA, in this

4

context there are three separate and distinct concepts: (1) SEVIS, which is a recordkeeping system DHS uses to maintain information on certain noncitizens who come to the United States to study, *see* ICE, SEVIS Overview, supra; (2) a visa, which is a document the State Department issues reflecting permission to apply for admission to the United States at a port of entry, *see* State Dep't, Visitor Visa, https://perma.cc/HN23-H3DK (captured April 28, 2025); and (3) immigration status, a noncitizen's formal immigration classification in the United States, *see* DHS, Maintaining Status, https://perma.cc/AM9P-LETR  (captured April 28,, 2025).

Terminating a SEVIS record only terminates the first of these; it does not terminate a noncitizen's immigration status or revoke a noncitizen's visa.  (Ex. A, ¶ 51.)  Title 8 U.S.C. § 1372 does not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record.  (*Id.*)

## II.    Factual Background

### A.    Plaintiffs

Plaintiffs allege that they are foreign nationals who have been in the United States on student visas, that the State Department has revoked their visas and that their SEVIS records have been terminated.  (Doc. 1.)  Their SEVIS records were terminated on various dates based on their criminal histories, but they are active as of April 24, 26, or 27, 2025. (Ex. A, ¶¶ 9, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50.)

### B.    Plaintiffs' Complaint

On April 21, 2025, Plaintiffs filed their complaint.  (Doc. 1.)  They bring an APA claim for alleged unauthorized SEVIS termination under Count One, a Fifth Amendment procedural due process claim for terminating their SEVIS records under Count Two, an APA procedural due process claim for terminating their SEVIS records under Count Three, an APA/Violation of *Accardi* Doctrine claim for allegedly targeting African, Arab, Middle Eastern, Muslim and Asian students in Count Four and an APA claim for alleged arbitrary and capricious termination of their SEVIS records in Count Five.  (*Id.* at 30-33.)

Plaintiffs seek declaratory and injunctive relief declaring that the termination of their

SEVIS records was unlawful, vacating ICE's termination of their SEVIS records, ordering Defendants to restore their "SEVIS record and record," enjoining Defendants from taking any enforcement action arising out of their "misdemeanor conviction, the unlawful termination of their SEVIS, or the potential unlawful revocation of their F-1 visa which may have already occurred." (*Id.* at 33.) Plaintiffs also seek injunctions preventing Defendants from detaining, transferring or removing them pending the proceedings. (*Id.* at 33-34.)

### C.    Plaintiffs' Motion

Plaintiff filed the Emergency Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. 3.) Despite asserting in the Complaint that they "do not challenge the revocation of their visas in this action (Doc. 1 at 5)," Plaintiffs seek a "temporary restraining order and preliminary injunction to prevent Defendants from taking any enforcement action against Plaintiffs arising directly or indirectly from the unlawful termination of their SEVIS records or *the potential unlawful revocation of their F-1 visas* (Doc. 3 at 9)." (Emphasis added.)

Plaintiffs argue that "SEVP regulations govern the termination of F-1 student status *in SEVIS*," citing 8 C.F.R. § 214.2(f). (Doc. 3 at 11.) (Emphasis added.) However, Plaintiffs do not point to a single provision in that regulation regarding *ICE terminating a SEVIS record.* Instead, they cite to 8 C.F.R. § 214.1(d), which relates to agency termination of *nonimmigrant status* and does not mention SEVIS or a SEVIS record.[1] (*Id.*) Plaintiffs assert that "ICE's termination of Plaintiffs' SEVIS records – and, consequently, their F-1 student status[2] – falls well outside the scope of the regulations and was therefore arbitrary, capricious, or otherwise contrary to the law." (*Id.* at 12.)

The Complaint does not allege that Plaintiffs have been issued a Notice to Appear or that ICE has initiated removal proceedings against any of them. (*See* Doc. 1, generally.)

---

[1] "Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed that it had terminated any of the plaintiffs' nonimmigrant status." (Ex. A, ¶ 51.)

[2] Plaintiffs do not include a citation for their statement that the termination of a SEVIS record terminates a student's F-1 status. As noted above, ICE does not take that position, and it is not supported by any statute or regulation.

Plaintiffs assert that "they fear the effect incarceration or deportation would have on their future."[3]  (Doc. 1 at 15-29.)  The Complaint does not allege that Plaintiffs personally[4] have been threatened with incarceration or deportation.  (*See* Doc. 1, generally.)

## I.    Legal Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right").  To obtain injunctive relief, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *Am. Trucking Assoc., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

The "serious questions" version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's *Winter* decision.  *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  Under that test, a preliminary injunction is appropriate when a plaintiff demonstrates that "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *Id.* (citing *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).  That approach requires that the elements of the preliminary injunction test be balanced, so that a stronger showing of one element may offset a weaker showing of another.  "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Id.* at 1131.  A plaintiff must also satisfy the other *Winter* factors.  *Id.*  Under

---

[3] Some Plaintiffs also state they fear the effect incarceration or deportation would have on their education or U.S. education.  (Doc. 1 at 16, 18, 28, 29.)

[4] The Complaint references actions that reportedly have been taken against others. (Doc. 1.)  The facts underlying those purported actions are not before this Court, and it is not clear that *any* of those purported actions were taken merely because a SEVIS record was terminated, which is all that Plaintiff has alleged here.

either standard, the moving party has the burden of proof on each element of the test. *Env't Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

When, as here, the plaintiff does not seek merely to preserve the status quo *pendent lite*, but instead seeks to compel the defendant to take affirmative action, the plaintiff's burden is even more demanding:  she "must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed."  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015); *see also Comm. of Cent. Am. Refugees v. Immigration and Naturalization Serv.,* 795 F.2d 1434, 1441 (9th Cir. 1986) (same).  "In plain terms, mandatory injunctions should not issue in 'doubtful cases.'"  *Id.* (*quoting Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011).

Where a party seeks to change the status quo through action rather than merely to preserve the status quo, typically the moving party must meet an even higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result."  *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (collecting authorities); *see League of Women Voters v. Newby*, Civ. A. No. 16-0236 (RJL), 2016 WL 8808743, at *1 (D.D.C. Feb. 23, 2016) ("This conclusion is bolstered by the fact that plaintiffs here seek not to maintain the status quo, but instead to restore the status quo ante, requiring this Court to proceed with the utmost caution.").

## II.     Plaintiffs are not entitled to a Preliminary Injunction

Plaintiffs conflate the agency's action here – the termination of their SEVIS records – with the termination of their F-1 status.  (Doc. 3 at 12.)  Plaintiffs include no allegations that ICE actually has terminated their *status*, which requires (1) "the revocation of a waiver authorized on his or her behalf under section 212(d) (3) or (4) of the Act;" (2)  "the introduction of a private bill to confer permanent resident status on such alien;" or, (3) "notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons."  8 C.F.R. § 214.1(d).  (*See* Doc. 1, generally.)   Moreover, Plaintiffs include no allegations that ICE has instituted any action to revoke their F-1 status or remove them from the United States, which could only occur after ICE instituted removal

proceedings and Plaintiffs have an opportunity to appear before an immigration judge.  8

U.S.C. § 1229a.  (*See* Doc. 1, generally.)

### A.    Plaintiffs have not demonstrated a likelihood of success on the merits.

#### 1.    Plaintiffs fail to identify a case or controversy because their F-1 non-immigrant status has not been terminated.

While Plaintiffs superficially challenge the change to their SEVIS records, the

ultimate relief they seek from the Court relates to their F-1 nonimmigrant status.  (*See* Doc.

1 at 33 (asking the Court to enjoin Defendants "from taking any enforcement action against

Plaintiffs arising directly or indirectly from their misdemeanor conviction, the unlawful

termination of their SEVIS, or the potential unlawful revocation of their F-1 visas which

may have already occurred," or from detaining, transferring, or removing Plaintiffs pending

these proceedings.)  In doing so, Plaintiffs assert without explanation that the termination of

the SEVIS record "consequentially" ends F-1 student status.  (Doc. 3 at 12.)

However, a nonimmigrant's SEVIS record is not the same as his F-1 nonimmigrant

status.  Changing a data entry field in a SEVIS record to "terminated" does not terminate

the alien's nonimmigrant status.  (Ex. A, ¶ 51).  SEVIS is a database to monitor and verify

certain information about F, M, and J nonimmigrants administered by SEVP.  (*Id.*, ¶¶ 34-5).

The applicable statute, 8 U.S.C. § 1372, does not provide SEVP with the authority to

terminate nonimmigrant status by changing a SEVIS record.  (*Id.*, ¶ 51.)  Thus, the entire

premise of Plaintiffs' complaint is incorrect, and there is no case or controversy before the

Court regarding Plaintiffs' F-1 nonimmigrant status.

Plaintiffs' real issue appears to be with the State Department's revocation of their

visas, which may be revoked at the consular officer or Secretary of State's discretion and

without judicial review.  *See* 8 U.S.C. § 1201(i).[5]  Accordingly, Plaintiffs offer no actual

case or controversy, and their claims will fail for lack of subject matter jurisdiction.

#### 2.    The United States has not waived sovereign immunity.

[5] The State Department prudentially revoked visas for Does #3, #4, #5, #6, #7, #8, #10, #11 and #13.  A prudential revocation makes the individual ineligible to approach the borders of the United States, requiring the alien to reapply for a new visa, "so that a new evaluation of the applicant's eligibility and admissibility can be made."  *See Ibrahim v. Department of Homeland Security,* 62 F.Supp.3d 909, 920-21 (N.D. Cal. 2014).

1   "Sovereign immunity is jurisdictional" and "[a]bsent a waiver, . . . shields the

2   Federal Government and its agencies from suit."   *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

3   "The burden rests with the plaintiff to demonstrate the government's waiver of immunity."

4   *Hafen v. Pendry*, 646 F. Supp. 2d 159, 160 (D.D.C. 2009) (citation omitted).   Waivers of

5   sovereign immunity must be "unequivocally expressed in statutory text… and will not be

6   implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted).

7   Even though the APA generally waives the government's immunity, APA section

8   702 "preserves 'other limitations on judicial review' and does not 'confer[] authority to

9   grant relief if any other statute . . . expressly or impliedly forbids the relief which is

10   sought.'"   *Cohen v. United States*, 650 F.3d 717, 724-25 (D.C. Cir. 2011) (quoting 5

11   U.S.C. § 702) (citing *Schnapper v. Foley*, 667 F.2d 102, 108 (D.C. Cir. 1981) (concluding

12   the government's immunity remains intact when "another statute expressly or implicitly

13   forecloses injunctive [or declaratory] relief"))*; see Match-E-Be-Nash-She-Wish Band of*

14   *Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) ("[Section 702] prevents

15   plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other

16   statutes."). "'[W]hen Congress has dealt in particularity with a claim and [has] intended a

17   specified remedy' – including its exceptions – to be exclusive, that is the end of the matter;

18   the APA does not undo the judgment." *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 216

19   (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22

20   (1983)); *see Block*, 461 U.S. at 287 ("A necessary corollary of this rule [that the United

21   States cannot be sued without the consent of Congress] is that when Congress attaches

22   conditions to legislation waiving the sovereign immunity of the United States, those

23   conditions must be strictly observed, and exceptions thereto are not to be lightly implied.").

24   The Privacy Act provides an alternative, adequate remedy to the APA. 5

25   U.S.C. § 552a(g)(1)(C) states,

26   Whenever an agency . . . fails to maintain any record concerning any
individual with such accuracy . . . as is necessary to assure fairness in any
determination relating to the qualifications, character, rights, or opportunities

27   of, or benefits to the individual that may be made on the basis of such record,
and consequently a determination is made which is adverse to the individual

28   . . . the individual may bring a civil action against the agency, and the district

courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1)(C).  Here, Plaintiffs are requesting the Court order Defendants to restore their "SEVIS record and record."  (Doc. 1 at 33.)  To the extent Plaintiffs seek judicial review under the APA to amend the status field contained in their SEVIS records, their claims fail because the Privacy Act addresses the same type of grievance, deals in particularity with the asserted claim, and Congress intended to afford an exclusive remedy for that type of claim.

First, the Privacy Act addresses the same type of grievance Plaintiffs assert, one seeking corrections to records held in government databases.  5 U.S.C. § 552a(b).  The Privacy Act establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records.  *See* Pub. L. 93–579 § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a) (notes)).  The Privacy Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures.  *See generally*, 5 U.S.C. § 552a.

Second, the Privacy Act sets forth the contours of the administrative process an agency must follow when an individual requests a record amendment, including submitting a request, the timeline for an agency response, a requirement that a denial includes the basis for the decision, and an appeal if the request is denied.  5 U.S.C. § 552a(d)(2).  The Privacy Act also states that agencies must establish particular procedures for the review and amendment process.  *Id.* at § 552a(f); *Quinn v. Stone*, 978 F.2d 126, 137 (3d Cir. 1992) (describing the "detailed set of requirements" for amending a record set forth in the Privacy Act).  It provides for judicial review of an agency's failure to amend the records, but only after administrative remedies have been exhausted.  5 U.S.C. § 552a(d)(1)-(4).  It also defines the class of persons who may sue, the venue where suit may be brought, the standard of review, the statute of limitations, and the available remedies including an order directing the agency to amend a record or to provide access to a record, costs, attorneys fees, and in some cases actual damages. *See* 5 U.S.C. §§ 552a(g)(1)- (5); *see also Block v.*

1  *North Dakota*, 461 U.S. 273, 286 (1983) (indicating that "the balance, completeness, and
2  structural integrity" of a statutory provision "belie[s] the contention that it was designed
3  merely to supplement other judicial relief").

4      Finally, Congress intended for the Privacy Act to provide the exclusive remedy in
5  these types of challenges.  The completeness of the Privacy Act scheme – to view,
6  challenge, and seek amendment of records, and to pursue civil remedies in court if
7  unsuccessful – shows Congress' intent for exclusivity.  That conclusion is consistent with
8  the legislative history in which Congress explained that the Privacy Act contained
9  provisions "for the exercise of civil remedies by individuals against the Federal
10  Government through the Federal courts to enforce their rights, with the burden of proof
11  resting on the government."  H.R. Report 93-1416 (Oct. 2, 1974) at 4 (*see* Privacy
12  Sourcebook5 at 297).

13      The Privacy Act, however, precludes review because Plaintiffs are foreign nationals.
14  5 U.S.C. § 552a(a)(2) provides, "the term 'individual' means a citizen of the United States
15  or an alien lawfully admitted for permanent residence."  5 U.S.C. § 552a(a)(2).  Plaintiffs
16  make no claim that they are either U.S. citizens or lawful permanent residents.  As such, the
17  United States has not waived sovereign immunity because the Privacy Act precludes
18  judicial review of Plaintiff's claims.  *See* 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1);
19  *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009);
20  *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583
21  F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a
22  Panamanian citizen, to assert a claim under the Privacy Act.").

23      In sum, Plaintiffs show no likelihood of success on the merits because the United
24  States has not waived sovereign immunity.

25          **3.    Plaintiff does not allege any final agency action.**

26      Only "final" agency action is reviewable under the APA.  5 U.S.C. § 704.  Agency
27  action is final only if (1) it marks "the consummation of the agency's decision-making
28  process" and (2) is "one by which rights or obligations have been determined, or from

12

which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).  The agency's action cannot be tentative or interlocutory in nature.  *Id.* at 178. "The finality doctrine is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts *an actual, concrete injury*." *Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 645 (9th Cir. 2005) (cleaned up) (emphasis added).

The change to Plaintiffs' SEVIS records fails to meet both factors of the final agency action test.  First, the change does not mark the consummation of any decision-making process.  SEVIS records are "an electronic means to monitor and verify" certain information about a student nonimmigrant.  (*See* Ex. A, ¶ 4 (citing 8 U.S.C. § 1372(c).) And changing a SEVIS record to "terminated" does not terminate nonimmigrant status in the United States.  (*Id.,* ¶ 51.)  Thus, the SEVIS record – indicating initial, active, inactive, completed or terminated – does not reflect the consummation of any agency decision-making process regarding the student's nonimmigrant status.

To the extent Plaintiffs rely on *Jie Fang v. Director of ICE*, 935 F.3d 172 (3d Cir. 2019), to argue that the termination of a SEVIS record is final agency action under the APA, that reliance is misguided.  In *Jie Fang*, DHS conducted a sting operation to catch fraudulent student visa brokers.  935 F.3d at 173-74.  During that process, several foreign students were granted nonimmigrant visas and entered the United States but DHS revoked their immigration status at the conclusion of the investigation.  *Id.*  The relevant issue in *Jie Fang* was not a SEVIS record; it was the revocation of lawful nonimmigrant status, which led to the students being placed into removal proceedings.  *See id*.

Second, legal consequences do not flow from the mere changing of a SEVIS record to terminated.[6]  As indicated, it does not terminate the student's nonimmigrant status or

---

[6] Plaintiffs attempt to avoid the lack of legal consequences from terminating a SEVIS record by reciting by rote:  "It is my understanding that a SEVIS termination indicates that I have failed to maintain studies, worked without authorization, or have been convicted of a violent crime for which a sentence of a year or more can be imposed."  (Doc. 2-2 at 4, 7, 10, 14, 17, 21, 23, 26, 30, 34, 36.)  Plaintiffs do not explain where they obtained their "understanding," which is not legally supported and does not show a legal consequence from a data entry change.

result in the revocation of a nonimmigrant visa. (Ex. A, ¶ 51.) Rather, it is record-keeping action conducted under DHS's authority to collect information and maintain records under 8 U.S.C. § 1372. *See Zhao v. Virginia Polytechnic Inst. and State Univ.*, No. 7:18cv00189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2008) (describing SEVIS record modification by school's DSO as "clerical duty performed as a preliminary matter").

Because the SEVIS termination did not terminate Plaintiffs' nonimmigrant status, they cannot establish that legal consequences flow from the challenged agency action. Thus, Plaintiffs fail to assert a viable claim under the APA because the change to their SEVIS records is not a final agency action.

Plaintiffs cannot show a likelihood of success on the merits on their APA claims.[7]

### 4.    The Agency's action does not violate due process.

Plaintiffs also cannot show a likelihood of success on the merits on their due process claims. "For a plaintiff to establish a procedural due process claim, it must show that (1) it has a protected interest, (2) the government deprived it of this interest, and (3) the deprivation occurred without proper procedural protections." *Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, 132 F. Supp. 3d 98, 122 (D.D.C. 2015) (citing *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1122 (D.C. Cir. 1988)). Plaintiff has no property interest in a SEVIS record. *See Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, Civ. A. No. 18-0189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (holding that plaintiff did not have an property interest in their SEVIS status that would implicate due process); *Bakhtiari v. Beyer*, Civ. A. No. 06-1489, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a congressional intent to confer a benefit on nonimmigrant students); *Doe 1 v. U.S. Dep't of Homeland Sec.*, No. 220CV09654VAPAGRX, 2020 WL 6826200, at n.3 ("Although Plaintiffs do not allege in

---

[7] Plaintiffs assert that they are likely to succeed on the merits by asserting "DHS failed to follow its own rules and regulations governing the proper termination of an F-1 student's record in SEVIS." (Doc. 3 at 28.) Specifically, Plaintiffs assert that "ICE's ability to terminate a student's *SEVIS record* is limited to three ways pursuant to 8 C.F.R. § 214.1(d)." (*Id.* at 29.) (Emphasis added.) However, that regulation relates to ICE terminating a student's *nonimmigrant status*, not a *SEVIS record*.

the Complaint or Motion a property interest in their SEVIS status, it is equally unlikely that one exists.").[8]

Because Plaintiffs do not have a constitutionally protected property interest in their SEVIS record, they cannot establish a procedural due process claim. *See Cmty. Fin. Servs.*, 132 F. Supp. 3d at 122.

**C.    Plaintiffs have not established a likelihood of immediate irreparable harm.**

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quoting *CityFed Fin.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). And Plaintiff must demonstrate "a particularized, irreparable harm beyond mere removal." *Nken v. Holder*, 556 U.S. 418, 438 (2009) (Kennedy, J., concurring).

Plaintiffs have failed to demonstrate irreparable harm arising *from their SEVIS record terminations*. Plaintiffs' speculative claims related to their loss of future schooling and employment opportunities, which are not directly tied to the SEVIS record terminations, do not constitute irreparable harm. (Doc. 3.) "Monetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*,

---

[8] "There is no constitutionally protected interest in either obtaining or continuing to possess a visa." *Loughalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017)

842 F. Supp. 2d 295, 301 (D.D.C. 2012) (citations omitted).  Additionally, their claims are speculative because a movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id*. at 414.  As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike."  *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015).

Moreover, the bulk of Plaintiffs' claimed irreparable harm appears to arise from the State Department's revocation of their visas – not the termination of their SEVIS records. Plaintiffs assert that they face "several forms of irreparable harm as a result of their SEVIS records [terminations]," including an inability to continue their studies or work, loss of all progress made to date on their degrees, and possible deportation.  (Doc. 3 at 33-34.) However, Plaintiffs have not produced any evidence that the termination of the SEVIS records causes any of those effects,[9] which no statute or regulation mandates.  Moreover, Plaintiffs' expressed fears regarding possible deportation appear to be directly based on the State Department's revocation of their visas, which they admit is not before this Court.

Plaintiffs falsely claim that they "have received notice that *because of their SEVIS termination*, "[D]eportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States.  Persons being deported may be sent to countries other than their countries of origin."  (Doc. 3 at 35, citing Doc. 2-2.) (Emphasis added.)  Review of the Plaintiff's declarations (Doc. 2-2) do not show that quotation, which appears instead in what appears to be a State Department email attached to a pleading filed in a different case by the same counsel.  *See Arizona Student Doe #2 v. Trump,* Case No. 4:25-cv-00175-AMM, Dkt. 2-5 at 2 (D. Ariz. Apr. 14, 2025).

---

[9] Several of the Declarations include the conclusory statement that "My employment has now been terminated due to my SEVIS termination."  (Doc. 2-2 at 3, 20.)  None of the identical statements includes who terminated the employment, how or why it occurred or how it results from the SEVIS record termination rather than the visa revocation or some other reason.  (*Id.*)

The email does not reference a SEVIS record termination.  *Id.*  Instead, the email references the applicant's nonimmigrant student (F-1) visa and informs the applicant that the visa has been revoked.  *Id.*  The email further states that "individuals *whose visa was revoked* may wish to demonstrate their intent to depart the United States using the CBP Home App."  *Id.* at 3. (Emphasis added.)  In short, the claimed "irreparable injuries" arising from the email and fear of deportation are directly related to the Plaintiffs' visa revocations, not the SEVIS record terminations.

Plaintiffs also assert that "Each plaintiff is currently accruing, or risks accruing, unlawful presence in the United States."  (Doc. 3 at 35, citing Doc. 2-2.) (Emphasis added.)  But Plaintiffs do not allege that the *termination of the SEVIS record* puts them out of status.  Instead, each Plaintiff declared "I also understand that *through the cancellation of my student visa*, I am at risk of accruing unlawful presence in the United States."  (Doc. 2-2 at 4, 7, 11, 14, 17, 21, 23, 26, 30, 34, 37 (Emphasis added.)  And USCIS has determined that they do not accrue unlawful presence until the day after a request for another immigration benefit is denied by USCIS or, during removal proceedings, the day after an Immigration Judge enters an order that the individual violated his nonimmigrant status, which is unrelated to a SEVIS record termination.[10]  *See* USCIS Memorandum on May 6, 2009.

As such, the Court should find that Plaintiffs have not established irreparable harm.

### D.    The balance of harms and the public interest weigh against relief.

The party seeking a preliminary injunction must show that the balance of equities tips in their favor and that the injunction is in the public interest.  *Winter*, 555 U.S. at 20. A court "'should pay particular regard for the public consequences'" of injunctive relief.  *Id.* at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

---

[10] "If USCIS finds a nonimmigrant status violation while adjudicating a request for an immigration benefit, unlawful presence will begin to accrue on the day after the request is denied.  If an immigration judge makes a determination of nonimmigrant status violation in exclusion, deportation, or removal proceedings, unlawful presence begins to accrue the day after the immigration judge's order. It must be emphasized that *the accrual of unlawful presence neither begins on the date that a status violation occurs, nor on the day on which removal proceedings are initiated*.  *See* 8 CFR 239.3."  USCIS Memorandum on May 6, 2009 at 25.

Here, the public interest weighs in favor of denying the motion. "Control over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992); *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("Our cases have long recognized the power to . . . exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy towards aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations," and such "matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.").

Plaintiff asserts that the balance of equities favors an injunction because "the public interest lies in a federal government that follows its own regulations." (Doc. 3 at 36.) However, as noted above, Plaintiffs have not identified a regulation that Defendants have not followed. (*See* Doc. 1, generally.) Congress tasked DHS with monitoring foreign students, and ICE is doing so through SEVIS. (Ex. A.)

Thus, the balance of the equities weighs in favor of the Government.

**III.    The Court should require Plaintiffs to post security.**

Federal Rule of Civil Procedure 65(c) states, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). To the extent that the Court grants relief to Plaintiffs, the United States respectfully requests that the Court require Plaintiffs to post security in an appropriate amount.

**V.    Conclusion**

Based on the foregoing, the United States respectfully requests that this Court deny Plaintiff's Motion for Preliminary Injunction (Doc. 3).

RESPECTFULLY SUBMITTED:  May 1, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ J. Cole Hernandez*
J. COLE HERNANDEZ
DENISE ANN FAULK
Assistant U.S. Attorneys
*Attorneys for United States*

*/ Resp MPI*